IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ZIEMBA V. ZIEMBA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DENISE L. ZIEMBA, APPELLANT,

V.

ADAM L. ZIEMBA, APPELLEE.

Filed June 14, 2022.    No. A-21-842.

Appeal from the District Court for Nance County: RACHEL A. DAUGHERTY, Judge. Affirmed.

James Walter Crampton for appellant.

John Morgan, of Morgan & Morgan, and Elizabeth J. Klingelhoefer and Jayme M. Krejci, of Jacobsen, Orr, Lindstrom, & Holbrook, P.C., L.L.O., for appellee.

MOORE, RIEDMANN, and ARTERBURN, Judges.

ARTERBURN, Judge.

INTRODUCTION

Denise L. Ziemba appeals from a decree of dissolution entered by the district court for Nance County which decree dissolved her marriage to Adam L. Ziemba, divided the marital assets and debts, awarded sole physical custody of their four children to Adam, while awarding joint legal custody to the parties. On appeal, Denise asserts that the district court erred in awarding Adam sole physical custody of the children. For the reasons set forth herein, we affirm the decision of the district court.

BACKGROUND

Adam and Denise were married in 2003. Four children were born of the marriage, Landon, age 17, Lainie, age 15, Londyn, age 10, and Landry, age 8.

- 1 -

On August 28, 2020, Denise filed a complaint for dissolution of marriage. In the complaint, she specifically asked that the parties' marriage be dissolved and that she and Adam be awarded joint legal and physical custody of the children. A voluntary appearance was filed by Adam that same day. Finally, a stipulated motion for a temporary order was filed by Denise and Adam along with an agreed upon parenting plan which provided the parties with joint legal and physical custody of the children during the pendency of the dissolution proceedings.

The parties followed the tenets of the temporary order which granted them joint custody of the children until March 2021. On March 22, 2021, Adam filed an answer and cross-complaint. In his pleading, Adam asserted that Denise was not a fit and proper person to have the temporary or permanent care, custody, and control of the children. Adam's cross-complaint requested that he be awarded permanent sole physical custody of the children. In addition, Adam filed a motion requesting temporary sole physical and legal custody of the children pending the dissolution proceedings.

A contested hearing regarding modification of the temporary custody order was held on May 14, 2021. At the close of the hearing, the district court found that the temporary care, custody, and control of the children were to be placed with Adam, subject to Denise's parenting time consisting of alternating weekends and holidays.

The case proceeded to trial on August 25, 2021. Denise and Adam both testified. Our recitation of the facts only concerns the issues affecting the custody of the children, as that is the only issue on appeal. We note that both parties' testimony was fairly brief and without detail.

Denise testified that at the time her complaint for dissolution was filed, she initially moved to Central City where she resided with her boyfriend. In October 2020 she moved into a residence in Fullerton. During this first period of separation, the children lived primarily with Adam on the family farm outside of Fullerton. The children attended school in Fullerton. Once Denise moved to Fullerton, the children lived with her 50 percent of the time as outlined in the parenting plan until the March 2021 temporary order was entered. She moved from Fullerton back to her boyfriend's residence in Central City in June 2021. Her current residence is located approximately 20 miles from the children's school in Fullerton. If she was to share custody with Adam, she believed that the children would still be able to travel to and from school from her residence.

At one point in her testimony, Denise indicated that she wanted sole custody. She noted an incident in November 2020, when Adam's grandmother passed away. The funeral and visitation occurred during her parenting time, however, she agreed with Adam that the children could attend the visitation and funeral. She asked only that Adam return the children to her at a designated time. According to Denise, Adam failed to do so on time. She explained that this prompted her to consider seeking sole custody, but she admitted that she did not seek to modify the temporary custody order previously entered by the district court at that time. At trial, she ultimately did not ask for sole custody, seeking only the reinstatement of the parenting plan originally agreed to at the time of filing.

Denise testified that in March 2021, there was an incident where the police were called due to Denise breaking 15 year old Lainie's cell phone. According to Denise, she told Lainie to stop using her phone and to go to bed. Lainie did not do so. Denise explained that Lainie called 911 when Denise attempted to take the phone away from her. Denise spoke with the 911 operator to

explain that there was no emergency. Denise testified that after the phone call, she threw the phone at the garage wall breaking the phone.

Denise acknowledged that since November 2020, she has been charged with two felonies and two misdemeanors. However, there was no evidence presented at the trial to indicate the specifics or the circumstances surrounding those charges. On direct examination from the court, Denise did acknowledge that a harassment protection order had been entered one month before trial, July 2021, which prevented her from having any contact with her children. Again, though Denise did testify to a series of events where she had conflict with some of her children, no testimony was adduced regarding what specific events led to the issuance of the protection order. Those incidents included an occasion where the three younger children refused to travel with her to attend a rodeo in which Landon was going to compete, an incident where she took Lainie's cell phone from Lainie's vehicle while she was at track practice and tried to get the younger children to provide her with the password to the phone. Both of these incidents ended with law enforcement ordering her to leave and in the latter case, return the cell phone.

Adam testified that although he initially agreed to the stipulated parenting plan in August 2020, he now believes that it would be in the children's best interests for him to have sole physical custody. He explained that while Denise was living in Fullerton, they were able to cooperatively co-parent. However, given the changes that had occurred, he did not think joint physical custody was appropriate. He did believe the children should spend time with their mother, however, and that joint legal custody was still workable.

Adam explained that his residence is a farm approximately eight or nine miles away from the children's school. The farm has been the children's home since birth. He stated that the children have chores which they regularly perform. The children have dogs, horses, and calves which they provide care for.

According to Adam, when Denise would exercise her parenting time, there were occasions where police needed to be involved. He does not believe that Denise is a fit parent because she "gets to partying and doing other things and then it's always a fight." Adam explained that police would get involved in these fights, which appear to be disputes with the children. Adam testified that Denise has had limited contact with the children since March 2021 and no contact since the protection order was entered.

At the close of the evidence and arguments thereon, the court made oral findings, specifically noting that based on the evidence, Adam would be awarded sole physical custody subject to parenting time granted to Denise. The court also noted that a different judge entered the protection order, thus, any parenting time awarded would be subject to that order. On August 27, 2021, the district court entered a decree of dissolution. The parties were granted joint legal custody of the children with Adam being awarded sole physical custody. The district court explained that the parties exercised joint physical custody with the children until the end of March 2021 when there was a dispute between Denise and Lainie. After that date, Denise began to exercise parenting time only every other weekend. In July 2021, a harassment protection order was issued against Denise on behalf of the children. Denise was also charged with felony and misdemeanor crimes. The court also noted the proximity of the school to Adam's residence, that the children knew that residence as their home, and had animals that they provide care for.

The district court found that the children have a strained relationship with Denise. The court explained that there was more than one dispute involving Denise and the children where law enforcement has been called. The district court also found that when the parties agreed to joint custody, Denise resided in Fullerton but has since moved. The court expressed concern about the distance from Central City to the school in Fullerton. Ultimately, the district court found that it was in the best interests of the children for Adam to have sole physical custody of the children.

Denise appeals the district court's decision regarding physical custody.

ASSIGNMENTS OF ERROR

Denise assigns as error and argues that the district court abused its discretion when it failed to approve the parties' original stipulated parenting plan and instead granted Adam sole physical custody of the children.

STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial court. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017). This standard of review applies to the trial court's determinations regarding custody, child support, division of property, alimony, and attorney fees. *Id.*

In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. *Id.* However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

ANALYSIS

Denise argues that because a stipulated parenting plan was developed and submitted to the court, the court should have ordered the parties to comply with that parenting plan.

In any proceeding in which parenting functions for a child are at issue, a parenting plan must be developed and approved by the court. Neb. Rev. Stat. § 43-2929(1) (Reissue 2016). The parenting plan "shall serve the best interest of the child." *Id.* In interpreting § 43-2929, the Nebraska Supreme Court has explained that a trial court has an independent responsibility to determine questions of custody and visitation of minor children according to their best interests. *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018). This responsibility cannot be controlled by an agreement or stipulation of the parties. *Id.* A trial court is required to review a parenting plan and determine if it meets requirements of the Parenting Act and if it is in the best interests of the minor children. *Id.* If the parenting plan lacks any of the elements required by the Act or is not in the child's best interests, the court shall modify and approve the parenting plan as modified, reject the parenting plan and order the parties to develop a new parenting plan, or reject the parenting plan and create a parenting plan that meets all the required elements and is in the best interests of the child. *Id.* However, if the court rejects a parenting plan, it must provide written findings as to why the parenting plan is not in the best interests of the children. *Id.*

When determining the best interests of the child in deciding custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). The Parenting Act also provides that the best interests of a child require a parenting plan that provides for a child's safety, emotional growth, health, stability, physical care, and regular school attendance and which promotes a child's continued contact with his or her families and parents who have shown the ability to act in the child's best interests. Neb. Rev. Stat. § 43-2392(1) and (3) (Reissue 2016).

In the present case, the district court found that the original stipulated parenting plan was no longer in the best interests of the children and gave both oral and written findings explaining the basis of that finding. The district court analyzed the evidence in light of the pertinent factors affecting the best interests of the children.

Upon our review, we can find no abuse of discretion in the court's determination. The parties' testimony indicates that while the joint custody arrangement was workable for a period of months, the relationship between Denise and the children became increasingly strained. In fact, Denise acknowledged that she has had limited contact with the children after March 2021 when the court entered a modified temporary order decreasing her parenting time. Four months later, a protection order had been issued against her on behalf of the children completely severing her ability to see them. Over the course of time, multiple incidents occurred where law enforcement needed to be involved to settle disputes between Denise and the parties' oldest daughter. Denise admitted to throwing Lainie's cell phone against a wall and breaking it on one occasion. In another incident, Denise took the cell phone from Lainie's car while she was at an athletic practice. Her actions involved the younger children and at least on one occasion resulted in the refusal of them to go with her on a family outing.

Finally, the parties' original stipulated parenting plan would disrupt the children's current routines. The children have lived on the farm near Fullerton throughout their lives and attend school there. Denise's residence is now in Central City and is approximately 20 miles away from the children's school. Given the distance between Denise's and Adam's homes, it would be difficult for the parties to share joint physical custody of the children.

Based on the record before us, we cannot say that the district court abused its discretion in determining that the best interests of the children would be best served by awarding Adam sole physical custody of the children.

CONCLUSION

We affirm the district court's decision to award Adam sole physical custody of the parties' minor children.

AFFIRMED.